# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------X

GEOFFREY BOWSER, Individually
and on behalf of all others
similarly situated,

             Plaintiff,

    vs.

THE CITY OF NEW YORK,

             Defendants.

Case No. 23-CV-06183 (DG)(VMS)

-------------------------------------X

DEPOSITION OF JOHN OTTOSEN

Monday, November 24, 2025

Conducted Remotely

REPORTED BY:

Christina Diaz, RDR CRC CRR RMR CSR-NY/NJ CLR

11/24/2025                  Geoffrey Bowser vs City of New York                  John Ottosen

Page 2

November 24, 2025

12:32 P.M. E.S.T.

Deposition of JOHN OTTOSEN, taken by plaintiff, pursuant to notice dated November 17, 2025, conducted remotely, before Christina Diaz, a Registered Diplomate Reporter, Certified Realtime Captioner, Certified Realtime and Registered Merit Reporter and Notary Public within and for the State of New York.

                    A P P E A R A N C E S


KLAFTER LESSER LLP

Attorneys for Plaintiff

        Two International Drive, Suite 350

        Rye Brook, NY 10573

        914.934.9200

        jak@klafterlesser.com

        jessica.rado@klafterlesser.com

BY:    JEFFREY A. KLAFTER, ESQ.

       JESSICA RADO, ESQ.


MURIEL GOODE-TRUFANT

CORPORATION COUNSEL OF THE CITY OF NEW YORK

Attorneys for Defendant

        100 Church Street

        New York, NY 10007

        212.356.2183

        sschonfe@law.nyc.gov

        jecullen@law.nyc.gov

BY:    SAMANTHA SCHONFELD, ESQ.

       JAMES CULLEN, ESQ.

11/24/2025                  Geoffrey Bowser vs City of New York                  John Ottosen

Page 4

I N D E X

WITNESS

John Ottosen

EXAMINATION BY                                              PAGE

Mr. Klafter                                                  8

Ms. Schonfeld                                               87


E X H I B I T S
(Exhibits attached to transcript)

OTTOSEN             DESCRIPTION                      PAGE

Exhibit 1        Violation Notice                    21
                 bearing Production
                 Nos. Bowser 18

Exhibit 2        Memorandum dated                    35
                 August 11, 2025
                 bearing Production
                 Nos. NYC 14 through 15

Exhibit 3        Introduction to Tow                 58
                 Operator's Training
                 bearing Production Nos.
                 NYC 30 through 116

Exhibit 4        Notice of Parking                   68
                 Violation bearing
                 Production Nos.
                 Bowser 15

Exhibit 5        Section 4-08 Parking,               69
                 Stopping, Standing,
                 29 pages

Page 5

E X H I B I T S (Continued)

| OTTOSEN | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 6 | Voucher# 416822 bearing Production Nos. Bowser 16 through 17 | 82 |

INFORMATION REQUESTS

INSERTED INFORMATION              - NONE -

REQUESTS FOR PRODUCTION           - NONE -

RULING                            - NONE -

DIRECTIONS NOT TO ANSWER          - NONE -

Page 6

S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the respective parties hereto, that all objections, except as to form, are reserved to the time of trial.

IT IS FURTHER STIPULATED AND AGREED that the deposition may be signed and sworn to before any officer authorized to administer an oath.

IT IS FURTHER STIPULATED AND AGREED that the sealing and filing of the deposition be waived.

11/24/2025                  Geoffrey Bowser vs City of New York                  John Ottosen

booted, so...

Q.    What do you mean by "proper violations"?

A.    So we tend not to boot -- the traffic flow violations, we do not want to boot.

Q.    So boots are for situations where the vehicle is not obstructing traffic flow.

Is that correct?

A.    The lower priority violations, correct.

Q.    And are those lower priority violations codified in certain provisions of the traffic code or -- let me ask you this.

What do you consider to be lower priority violations?

A.    It would probably be easier to list the higher priority violations, which would be bus stop, bus lane, double parking, hydrant, crosswalk, no standing,

Page 32

no stopping.

Q.   What about obstructing an entrance into an emergency room of a hospital -- that's not something that would be booted, right?

A.   We don't tow for driveways.

Q.   Let's say someone parked and blocked the emergency room entrance to a hospital.  Is that a booting or just a direct tow situation?

A.   We don't tow driveways or entranceways.

Q.   So when you say you don't tow, so if someone parked and blocked a hospital emergency room egress/entrance, the police department would just leave the car there?

A.   I am not saying that.  The police department has a rotation tow program of privately contracted vendors.  They are responsible for removing driveway obstructions, so a road tow vendor would be contacted to remove that vehicle.

very accommodating to motorists.  We often have a shortage of tow trucks, and we do not want to tow the vehicles.

Q.    What types of accommodations were provided when you were commander of the Queens tow pound?

A.    Motorists either encounter the boot team or the boot supervisor.  The boot team and supervisor do regular checks on all booted vehicles.

They can also contact the tow pound.  And if they state they are on their way or they are about to start a traveling to the tow pound, we will give them time to get to the tow pound.

Q.    So provided they are on their way?

A.    Correct.  If they tell us they are on their way, we will give them the time to come to the tow pound.

Q.    About how much time is that?

A.    It varies, but it's -- either the

11/24/2025                Geoffrey Bowser vs City of New York                John Ottosen

Page 57

be?

A.    That, I cannot answer.  I don't have the answer.

Q.    Do traffic agent -- I think you said 3 -- level 3 -- are involved in booting and towing of vehicles.  Is that right?

A.    Correct.

Q.    Do they receive training before going out in the field?

A.    They do.

Q.    Are there written training materials for them?

A.    There is.

Q.    Are you familiar with those written training materials?

A.    I am.

MR. KLAFTER:  Let's mark as the next exhibit, a document -- Jessica, it's the document Introduction to Tow Operators Training.  It's hard to see all the Bates numbers because they are

Page 73

A.    Again, it could be either depending on the circumstances.

Q.    Again, whether it's a wide street or a narrow street?

A.    That's one of the factors that the issuing officer or agent has to use their discretion on.

Q.    How is the traffic agent level 3 informed about how to exercise that discretion?

A.    Traffic agents receive training in the academy, basic training when they are hired.  They also get it from field experience and instructions from their supervisors.

Q.    So are the traffic agent level 3s instructed that if it's a question to run the up the flag pole, so to speak, and get approval from a supervisor before making the decision whether to boot first or just tow?

A.    Tow operators are expected to use

Page 74

their discretion.  If they are unable or have a question, yes, they are supposed to elevate it to their supervisor.

Q.    We looked at the training materials and didn't see anything about discretion issues and how to exercise discretion.

So other than those training materials, how else would traffic agent level 3s be informed as to how to exercise any discretion they have?

A.    That training is received when they are first hired as a traffic agent and they complete their basic academy training.

Q.    So there are training materials for level 1s that would address the discretion issue with regard to whether to boot a vehicle or just tow it.

Is that what you are saying?

A.    No.

Q.    So, again, you say when they are first hired.  So if they are first hired as

Page 75

level 1s, if they are not trained in that

issue there, there is no training at

level 3.

So where is the training on how

to exercise any discretion that they have?

A.    In the basic academy when they

are first hired, they are given training on

using discretion when issuing violations.

Q.    Is the overriding policy whether

there is an obstruction of traffic flow?

A.    In the academy, they are taught

the different levels of severity for

different parking violations, such as a

street cleaning versus a bus stop.

Q.    So a street cleaning situation

could very well be booted, but a bus stop

situation would not because it's impeding

the flow of City buses?

A.    A bus stop violation should not

be booted.  It should be immediately towed.

A street cleaning, it's one of

the lowest violations.  Yes.  They can be