UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GEOFFREY BOWSER,
individually and on behalf of all others         23-CV-06183 (DG)(VS)
similarly situated,

         Plaintiff,

      -against-

THE CITY OF NEW YORK, and DERMOT F.
SHEA, KEECHANT SEWELL, and EDWARD A.
CABAN, each in his/her individual capacity,

        Defendants.
-------------------------------------------------------------x

**PLAINTIFFS' RESPONSE TO DEFENDANT CITY OF NEW YORK'S
STATEMENT OF UNDISPUTED MATERIAL FACTS AND
<u>COUNTERSTATEMENT OF UNDISPUTED MATERIAL FACTS</u>**

Pursuant to Your Honor's Individual Practice Rules pertaining to Pre-Motion Conference

requests to file a Motion under Fed. R. Civ. P 56, Plaintiff Geoffrey Bowser, through his counsel,

hereby responds to Defendant City of New York's ("Defendant" or "NYC") Rule 56.1 Statement

of Undisputed Material Facts, and also submits his Counterstatement of Material Facts, as

follows:

**I.**     <u>**Plaintiffs' Response to City of New York's Statement of Undisputed Material Facts**</u>

1.     The New York State Vehicle and Traffic Law ("VTL") authorizes a city to

establish an administrative tribunal to hear and determine complaints of traffic infractions

constituting parking, standing or stopping violations. <u>See</u> VTL §§ 235, 236(1).

> **RESPONSE: Undisputed, but Dispute that it sets forth a Material or Relevant
> Fact. That the VTL authorizes the NYC to establish an administrative tribunal to
> hear and determine complaints of traffic infractions" has no bearing on
> Plaintiff's claims. Plaintiff's Fourteenth Amendment procedural process claims
> is that NYC failed to provide specific notice to Plaintiff of a right to challenge the
> booting and towing fees he was required to pay. As Magistrate Judge Scanlon**

1

**held, any notice to Plaintiff of his ability to challenge the underlying parking summons was irrelevant to Plaintiff's procedural due process claim. See ECF No. 36 (Magistrate Judge Scanlon's Report and Recommendation ("R&R") at 14:**

> The Court rejects Defendants' argument that the Court should construe the notice of the right to a hearing as to the fine for the Ticket as notice of the right to challenge the boot and tow fees at the same hearing. Notice that a person can challenge one particular fee or violation cannot reasonably be understood to be notice of a right to challenge other fees. The omission of a notice may have very real consequences for the person accused of the violation. An individual, such as Plaintiff, may make the calculus that challenging a $60.00 fine for a ticket may not be worthwhile but may decide, if given notice of the right to a hearing to challenge a $185.00 boot fee, $185.00 tow fee, and/or related storage fees, that engaging in such hearing process would be worthwhile. If notice of the right to a hearing provides the recipient with notice of the right to challenge only some, but not all, of the subject matters at issue, the notice is of no value to the recipient as to the subject matter not included in the notice, such that Defendants' argument is unpersuasive.

**As notice of this tribunal has been held to be irrelevant, so is the tribunal.**

2. The VTL authorizes the administrative tribunal to prepare and issue notices of parking violations, accept pleas, hear and determine charges, provide for penalties, and enter and enforce judgments in the same manner as the enforcement of money judgments in civil proceedings. See VTL § 237.

> **RESPONSE: Undisputed, but Dispute that it sets forth a Material or Relevant Fact. See Response to No. 1.**

3. The Parking Violations Bureau ("PVB") is a tribunal within the New York City Department of Finance ("DOF"), that was established pursuant to the VTL, Section 1504(4) of the New York City Charter ("City Charter") and Section 19-201 of the New York City Administrative Code ("Admin. Code"). See City Charter § 1504(4); Admin. Code § 19-201; VTL § 237.

**RESPONSE: Undisputed as to the basis for the establishment of the PVB, but Dispute that it sets forth a Material or Relevant Fact. See Response to No. 1.**

4.     The PVB has jurisdiction to hear and determine complaints pertaining to "violation[s] of any local law, rule or regulation provided for or regulating the parking, stopping or standing of a motor vehicle." See Admin. Code § 19-201.

**RESPONSE: Undisputed as to the content of this provision of the Administrative Code, but Dispute that it sets forth a Material or Relevant Fact. Whatever jurisdiction the PVB has is not relevant to Plaintiff's procedural due process claim as the issue is whether adequate notice of the right to challenge the booting and towing fees Plaintiff had to pay, which notice Magistrate Judge Scanlon concluded was lacking. See Response No. 1.**

5.     After a summons is issued, the recipient of the summons has thirty (30) days to either plead guilty and pay the associated fine or challenge the summons at a hearing at PVB. See VTL § 241; Admin. Code §§ 19-206, 19-207.

**RESPONSE: Undisputed as to the content of the cited legislation, but Dispute that it sets forth a Material or Relevant Fact. The procedures governing the payment of a traffic summons are not relevant. See Response No. 1.**

6.     In all capital letters, a notice of parking violation states, "TURN OVER FOR INFORMATION ON HOW TO PAY OR DISPUTE THIS TICKET." See Declaration of Samantha Schonfeld in Support of Defendants' Motion to Dismiss the Amended Complaint, filed on June 25, 2024, ECF No. 32 ("Schonfeld Dec."), Ex. A at 1.

**RESPONSE: Undisputed as to the content of the parking ticket, but Dispute that it sets forth a Material or Relevant Fact. The instructions on the ticket for paying the ticket are irrelevant. See Response 1.**

7.     In all capital letters on the back of a notice of parking violation a heading states "TO PLEAD GUILTY AND PAY THE VIOLATION." Id. at 2.

**RESPONSE: Undisputed as to the content of the parking ticket, but Dispute that it sets forth a Material or Relevant Fact. Instructions for paying the parking**

**ticket are irrelevant. See Response No. 1.**

8. Beneath this heading, instructions are provided on how to pay violations online, by mail, or in person. Id. at 2.

> **RESPONSE: Undisputed as to the content of the parking violation, but Dispute that it sets forth a Material or Relevant Fact. Instructions for paying the parking ticket are irrelevant. See Response No. 1.**

9. In all capital letters on the back of a notice of parking violation a heading states "TO PLEAD NOT GUILTY AND REQUEST A HEARING." Id. at 2.

> **RESPONSE: Undisputed as to the content of the parking violation, but Dispute that it sets forth a Material or Relevant Fact.**
> **Instructions for pleading not guilty and requesting a hearing, both of which pertain to only the parking violation are irrelevant. See Response No. 1**

10. Beneath this heading, instructions are provided on how to request a hearing online or by using the NYC Pay or Dispute Mobile App. Id. at 2.

> **RESPONSE: Undisputed as to the content of the parking violation, but Dispute that it sets forth a Material or Relevant Fact.**
> **Instructions for requesting a hearing using the NYC Pay or Dispute Mobile App, which pertain to only the parking violation are irrelevant. See Response No. 1.**

11. A PVB administrative law judge is empowered to make a determination of the charges set forth in a summons, either sustaining or dismissing them. See VTL § 241; Admin. Code § 19-207; 19 RCNY § 39-10.

> **RESPONSE: Undisputed as to the content of the referenced laws, but Dispute that it sets forth a Material or Relevant Fact.**
> **The authority of an administrative law judge to rule on the charges set forth in the summons, which is a parking violation, is irrelevant. See Response No. 1.**

12. If a recipient of a summons is not satisfied with the result of the PVB hearing, he or she may appeal the determination to the Parking Violations Appeals Board ("Appeals Board"). See VTL § 242, Admin. Code § 19-208; 19 RCNY § 39-12.

**RESPONSE: Undisputed as to the content of the referenced laws, but Dispute that it sets forth a Material or Relevant Fact. See Response No. 1.**

13. The order of the Appeals Board constitutes the final determination of PVB, subject to CPLR Article 78 review. <u>See</u> Admin. Code § 19-209.

**RESPONSE: Undisputed as to the content of the referenced laws, but Dispute that it sets forth a Material or Relevant Fact. See Response No. 1.**

14. Title 19 of the Rules of the City of New York ("RCNY") Section 39-04(c) states, "*Pleas of guilty; payment.* Pleas of guilty must be accompanied by a check, money order, or other form of payment, electronic or otherwise, as prescribed by the Director, for the payment in full of the scheduled fines as listed in 19 RCNY § 39-05 and 19 RCNY § 39-06 and the penalties as listed in 19 RCNY § 39-07." <u>See</u> 19 RCNY § 39-04(c).

**RESPONSE: Undisputed as to the content of the referenced laws, but Dispute that it sets forth a Material or Relevant Fact. The requirement that a plea of guilty of a parking violation be accompanied by certain forms of payment is irrelevant. See Response No. 1.**

15. The NYPD Traffic Enforcement District ("TED") "immobilizes vehicles that are parked in violation of [New York City] parking rules." <u>See</u> NYC000014.

**RESPONSE: Disputed.**
**Defendants 30(b)(6) designee, Commander Ottosen of the NYPD, testified that vehicles are only immobilized when the parking infraction is the lowest category of parking violation, which do not create any impact on traffic flow or safety. See Ottosen Tr. 40:8-12, attached to Declaration of Jeffrey Klafter as Exhibit C.**

16. A vehicle is immobilized by affixing a boot to the steering wheel or to the windshield of a vehicle. <u>See</u> <u>id</u>

**RESPONSE: Disputed.**
**The cited authority does not state that a boot may be affixed to the steering wheel. To the contrary, it states that a vehicle may be immobilized by affixing a boot to a wheel of the vehicle or windshield. See NYC 000014, attached as Exhibit B to the Klafter Declaration. But the NYPD instructions given for booting a vehicle only**

**refer to attaching a boot to the wheel of a vehicle. See NYC000030-31, NYC000098 – 102, attached as Exhibit B to the Klafter Declaration.**

17.     Traffic Flow violations and Safety Quality of Life violations are high priority violations that include vehicles parked in bus stops, bus lanes, bike lanes, traffic lanes, crosswalks and hydrants. Id.; See also Deposition Transcript of John Ottosen, dated November 24, 2025 ("Ottosen Dep. Trans.") at 31:17 – 32:1.

> **RESPONSE: Undisputed, but Dispute that it sets forth a Material or Relevant Fact.**
> **Traffic Flow violations and Safety Quality of Life violations are irrelevant as vehicles are not booted for either type of violations, as Defendant admits in its Statement No. 18; see also Ottosen Tr. at 38:17-39:12, attached as Exhibit C to the Klafter Declaration.**

18.     Vehicles guilty of Traffic Flow violations and Safety Quality of Life violations are not booted. See NYC000014.

> **RESPONSE: Undisputed.**

19.     Rather, vehicles guilty of Traffic Flow violations and Safety Quality of Life violations are immediately towed in order to remove the traffic obstruction. Id

> **RESPONSE: Undisputed.**

20.     Low priority traffic violations include, but are not limited to, parking in no-parking zones, parking in commercial zones as well as street storage of commercial vehicles and overnight parking of commercial vehicles in residential areas. See NYC000014-15.

> **RESPONSE: Undisputed, but further state that the parking ticket issued to Plaintiff that resulted in the booting and towing of his vehicle was a low priority traffic violation. See Ottosen Tr. 40:8-12, 68:7-70:16.**

21.     Low priority violations are booted. See NYC000014-15:

> **RESPONSE: Plaintiff is not in a position to admit or deny that all low priority**

**violations are, in fact, booted by the NYPD.**

22.     When a vehicle is booted, a Boot Notice is placed on the driver's side window of the vehicle. See NYC000015:

**RESPONSE: Undisputed that a Boot Notice is placed on the driver's side window of the vehicle but dispute that the vehicle owner would see it if the vehicle has already been towed.**

23.     The Boot Notice contains instructions on how to remove the boot. Id.

**RESPONSE: Dispute that the Boot Notice contains instructions on how the vehicle owner can personally remove the boot and provides no instructions for having the boot removed by the NYPD from the vehicle location.  See also Response to No. 22.**

24.     Specifically, the Boot Notice states "You must pay one hundred & eighty-five dollars ($185.00) at the Brooklyn Tow Pound within TWO (2) HOURS of the boot time listed above . . . or [y]our vehicle will be towed for an additional fee of $185.00." See Bowser000018.

**RESPONSE: Undisputed that this text is included in the Boot Notice placed on Plaintiff's vehicle, in the form of a window sticker, but disputed as to the adequacy of two hours from when the vehicle is booted to pay $185 at the tow pound.  See also Response to No. 22.**

25.     The Boot Notice also contains instructions on how to redeem a towed vehicle. Id.

**RESPONSE: Undisputed but dispute that this Notice is adequate as Plaintiff did not see it as his vehicle had already been towed.**

26.     Specifically, the Boot Notice states "To redeem your vehicle you must present all of the following documents: (1) Current valid driver's license. (2) Current valid Registration Certificate or Rental Agreement. (3) Current valid Insurance Card." Id.

**RESPONSE: Undisputed that this text is included on the window sticker, but**

**dispute that this Notice is adequate. See Response to no. 25.**

27.     If necessary, a motorist can call the tow pound to ask for additional time to travel to the tow pound to pay the boot fee. See NYC000015:

> **RESPONSE: Disputed. The Boot Notice does not provide such information, and furthermore Plaintiff did not even know his vehicle was towed to a tow pound, or to which tow pound, as his vehicle has already been towed. Bowser Tr. 55:16-56:8, 79:10-24 attached as Exhibit D to the Klafter Declaration. Further, additional time would not matter to Plaintiff as the vehicle has already been towed.**

28.     The motorist can inform the tow pound that they "are on their way or they are about to start [] traveling to the tow pound." See Ottosen Dep. Trans. at 46:11-14.

> **RESPONSE: See Response to No. 27.**

29.     If a motorist informs the tow pound that they are on their way, the NYPD "will give them the time to come to the tow pound." Id. at 46:18-20.

> **RESPONSE: See Response to No. 28.**

30.     After the two-hour time period has elapsed, a boot supervisor will speak with the redemption unit at the tow pound to determine whether the boot fee was paid before arranging the towing of a vehicle. See NYC000015.

> **RESPONSE: Undisputed.**

31.     To pay a boot fee, a motorist must go to the tow pound "with a valid license, registration, and insurance." Id.

> **RESPONSE: Undisputed that the Boot Notice included said language, but further state that the same is true to pay a tow fee and dispute that this is material or Relevant to Plaintiff's claim as his vehicle had already been towed.**

32.     Once payment is received, the boot team in the field is notified to remove the

boot. Id.

**RESPONSE: Undisputed but dispute that this is Material or Relevant to Plaintiff's claims as his vehicle had already been towed.**

33. If the boot fee has not been paid, the vehicle is towed. Id:

**RESPONSE: Undisputed.**

34. Level 3 Traffic Agents are involved in the booting and towing of vehicles. See Ottosen Dep. Trans. at 57:4-8.

**RESPONSE: Undisputed.**

35. Level 3 Traffic Agents "receive training in the academy, basic training when they are hired. They also get it from field experience and instructions from their supervisors." Id. at 73:11-15.

**RESPONSE: Undisputed.**

36. When they are first hired, Level 3 Traffic Agents "are given training on using discretion when issuing violations." Id. at 75:6-8.

**RESPONSE: Undisputed but further state that traffic enforcement agents are required to use their discretion in issuing summons, placing boots and ordering towing, depending on the circumstances. Ottosen Tr. 42:8-14, 73:5-75:14, 76:4-19. Mr. Otteson further stated that in exercising their discretions, traffic agents view traffic and safety the most important factors. Ottosen Tr. 76:4-77:10.**

37. Level 3 Traffic Agents "are taught the different levels of severity for different parking violations" Id. at 75:11-13. Same

RESPONSE: **See Response to No. 36.**

38. Between February 2023 and October 2024, Plaintiff received 18 parking violations. See NYC000121-137; Bowser000015.

**RESPONSE: Undisputed that Mr. Bowser received said parking tickets, but Dispute that it sets forth a Material or Relevant Fact as none of those parking tickets resulted in the booting or towing of his vehicle. Bowser Tr. 36:19-25 attached as Exhibit D to the Klafter Declaration.**

39.     Of those 18 parking violations, 7 violations were for parking in no parking zones. See NYC000121-124; NYC000131-132; Bowser000015.

**RESPONSE: See Response to No. 38.**

40.     Plaintiff has challenged prior parking tickets. See Deposition Transcript of Geoffrey Bowser ("Pl. Dep. Trans.") at 42:23-43:5.

**RESPONSE: Undisputed that Mr. Bowser has indicated that he previously challenged parking tickets, but Dispute that it sets forth a Material or Relevant Fact as none of those parking tickets resulted in the booting and towing of his vehicle.   See Response to No. 1.**

41.     Plaintiff "challenged [a parking ticket] specifically on Cumberland Street like [] where the subject ticket was. I just don't know if it was the subject ticket one or a prior one in almost the exact same location…"" Id. at 42:23-43:2.

**RESPONSE: See Response to No. 40.**

42.     Plaintiff "prevailed as an attorney challenging someone else's [parking] ticket" in misdemeanor court. Id. at 43:18-22.

**RESPONSE: See Response to No. 40.**

43.     Plaintiff can afford to pay the fees associated with the boot and tow of a vehicle. Id. at 81:9-10.

**RESPONSE: Dispute that it sets forth a Material Fact.**

As Magistrate Judge Scanlon held, that Plaintiff had adequately pled a violation of the Eighth Amendment's Excessive Fines prohibition because he pled "that the combination of such fines is grossly disproportionate to a single parking violation."

R&R at 25. Whether Plaintiff could afford to pay a total of $499.80 to retrieve his vehicle from the tow pound is therefore irrelevant.

44. Plaintiff states that "the $65 fines or whatever for parking….every few months would [I] would have to pay $65, way cheaper than parking in a parking garage." Id. at 45:22-25.

**RESPONSE: Dispute that it is accurate and that it sets forth a Material or Relevant Fact.**

**Plaintiff's payment of individual parking tickets, none of which led to the booting and towing of his vehicle, is irrelevant to whether the combination of fines at issue violates the Eighth Amendment, which is an objective test. Additionally, the implication that Plaintiff made a calculation to incur a parking rather than parking in a garage is false. Plaintiff testified that the no parking signage in this neighborhood is not clear and that he did not intentionally unlawfully park. Bowser Tr. 42:23-43:14, attached as Exhibit D to the Klafter Declaration.**

45. On April 3, 2023, at approximately 7:16 a.m., Plaintiff was issued Summons No. 899961210-7 ("subject summons") for parking in a no-parking zone in violation of 34 RCNY § 4-08(d). See Bowser000015.

**RESPONSE: Disputed.**

**Dispute that Plaintiff was issued the referenced Summons. Plaintiff's vehicle was towed before he saw this Summons.**

46. Specifically, Plaintiff parked his vehicle "opposite 395 Cumberland St." in Brooklyn, New York. Id

**RESPONSE: Undisputed.**

47. At approximately 7:18 a.m. on April 3, 2023, Plaintiff was issued a notice stating that the vehicle violated New York City traffic rules and informed Plaintiff that the vehicle "has been immobilized." See Bowser000018.

**RESPONSE: Disputed.**

Dispute that Plaintiff was issued the referenced notice and was informed that his

vehicle has been immobilized.  Plaintiff's vehicle was towed before he saw this notice.

48.     The notice further informed Plaintiff that his vehicle would be towed to the Brooklyn Tow pound if he did not pay the $185.00 boot fee within two hours of the boot time listed on the notice. Id.

**RESPONSE: See Response to No. 47.**

49.     Later that morning, at 9:55 A.M. on April 3, 2023, Plaintiff's vehicle was towed to the Brooklyn Tow Pound. See NYC000016.

**RESPONSE: Undisputed.**

50.     Plaintiff accrued storage fees of $20 per day for each day the vehicle remained at the tow pound. See Id.

**RESPONSE: Undisputed.**

51.     In total, Plaintiff incurred $120.00 in storage fees. Id.

**RESPONSE: Undisputed.**

52.     On April 10, 2023, Plaintiff paid a total of $499.80 in fees to the tow pound. Id.

**RESPONSE: Undisputed.**

53.     Specifically, Plaintiff paid $120.00 in storage fees, a $185.00 towing charge, a $185.00 boot fee and a $9.80 service fee. Id.; Bowser000016.

**RESPONSE: Undisputed.**

54.     On April 10, 2023, Plaintiff's vehicle was retrieved from the tow pound. See Bowser000016.

**RESPONSE: Undisputed.**

55. Plaintiff no longer leases or owns the vehicle at issue in this litigation. See Pl. Dep. Trans at 19:11-14.

**RESPONSE: Undisputed that Mr. Bowser no longer leases or owns the vehicle that received the parking violation on April 3, but disputed to the extent that it is irrelevant and immaterial to the present case.**

56. Plaintiff no longer leases or owns any vehicle. See Pl. Dep. Trans. at 19:15-16.

**RESPONSE: Undisputed that Mr. Bowser no longer leases or owns any vehicles, but disputed to the extent that it is irrelevant and immaterial to the present case.**

## II.   Plaintiffs' Counterstatement of Undisputed Material Facts

1. Plaintiff Bowser's vehicle was booted two minutes after receiving the summons for a parking violation, and towed within two hours of the boot being placed. See Bowser000015, attached as Exhibit A to the Klafter Declaration.

2. NYC only boots vehicles that are not obstructing traffic flow and which do not present Safety Issues. Ottosen Dep. at 31:4-12, attached as Exhibit C to the Klafter Declaration.

3. NYC considers the following as high priority violations: bus stop, bus lane, double parking, hydrant, crosswalk, no standing, no stopping. Ottosen Dep. at 31:19-32:1 attached as Exhibit C to the Klafter Declaration.

4. If a vehicle is parked in a high priority area, such as near a fire hydrant, the NYPD would tow the car immediately, without booting it. Ottosen Dep. at 28:7-13 attached as Exhibit C to the Klafter Declaration.

5. Plaintiff's parked car was not obstructing traffic flow and did not present any

Safety issues. Ottosen Tr. 68:7-70:6 attached as Exhibit C to the Klafter Declaration.

6. It is an established policy of the NYPD that traffic flow violations and safety quality of life violations are not booted. NYC000014-15, attached as Exhibit B to the Klafter Declaration.

7. This policy of the NYPD has been in place for several years, at least since before 2018. Ottosen Dep. 38:4-6 attached as Exhibit C to the Klafter Declaration.

8. If the motorist doesn't get to his vehicle within two hours of the boot being placed, and the car is towed, the motorist is not going to see the Boot Notice. Ottosen Dep. 45:11-7 attached as Exhibit C to the Klafter Declaration.

9. When the car was towed, Plaintiff was left without any notice of where his car was being towed to. Bowser Tr. 60:18-61:16 attached as Exhibit D to the Klafter Declaration.

10. Neither the Ticket nor the Boot Notice provided Plaintiff with notice of the right to challenge the boot fees or the tow fees at a hearing. R&R at 13, Bowser 000015-18, attached as Exhibit A to the Klafter Declaration.

11. The Ticket issued to Plaintiff specified a parking violation that is the lowest type of parking violation. Ottosen Tr. 68:2-70:16, attached to Declaration of Jeffrey Klafter as Exhibit C.

12. Where Plaintiff's vehicle was booted, it did not interfere with traffic or create any safety issues. See Defendant's Statements No. 18 - 20 above; Ottosen Tr. 40:8-12, attached to Declaration of Jeffrey Klafter as Exhibit C.

13. The combination of the booting, towing fees and storage fees ($390) are grossly disproportionate to the single parking offense the Plaintiff was charged with, which was the lowest type of parking violation. See R&R at 25, Defendant's Statement No. 18.

14.	Plaintiff Bowser now rents cars as needed.  Bowser Tr. 47:7-24 attached as

Exhibit D to the Klafter Declaration.


Dated:	February 2, 2026
	Rye Brook, New York

	Respectfully submitted,

	By: /s/  Jeffrey A. Klafter
	Jeffrey A. Klafter, Esq.
	Seth R. Lesser, Esq.
	Jessica Rado, Esq.
	KLAFTER LESSER LLP
	Two International Drive, Suite 350
	Rye Brook, New York 10573
	Telephone: (914) 934-9200
	Fax: (914) 934-9220
	E: jak@klafterlesser.com
	    seth@klafterlesser.com
	    jessica.rado@klafterlesser.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 2, 2026, the foregoing was served via e-

mail on the following counsel of record for Defendant:


	Samantha Schonfeld
	Assistant Corporation Counsel
	MURIEL GOODE-TRUFANT
	Corporation Counsel of the City of New York
	Attorney for Defendant



	/s/ Jeffrey A.Klafter
	Jeffrey A. Klafter